The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable John W. Turner presiding. Thank you. Good morning. We're here now on case number 4-2-3-0-1-7-9. That's People v. Kendricks El. With counsel for the appellate, please identify yourself for the record. Good morning, Your Honor. Omar Jalil, J-A-L-E-E-L, on behalf of Mr. Kendricks El. Thank you. And counsel for appellate, would you please state your name for the record? My name is Justin Nicolosi with the State of Illinois, the Appellate Prosecutor's Office. Okay, thank you. Mr. Jalil, are you ready to proceed? I am, Your Honor. Please do so. Thank you. Mr. Nicolosi, Honorable Justices, may it please the court. My name is Omar Jalil and I represent Mr. Kendricks El. The trial court below ruled that Trooper Scott didn't need to possess probable cause, that he didn't need to possess reasonable suspicion, that he didn't need to possess anything other than a stopped vehicle prior to conducting the K-9 sniff on Mr. Kendricks El's vehicle. This ruling was incorrect. Instead, the Fourth Amendment required Trooper Scott to that Mr. Kendricks El was transporting one of the three substances that K-9 Danos was trained to detect before he could detain Mr. Kendricks El or his vehicle. Here, Trooper Scott was just acting on a mere hunch. He did not possess reasonable or particular suspicion. And in fact, the state below didn't even argue that he possessed it. Instead, they found that simply because the vehicle was stopped, it gave Trooper Scott authority to run a K-9 sniff. That's simply not correct. This court's rulings and the United States United States Supreme Court rulings have all clearly said that prior to detaining somebody or a protected effect, the police need to possess reasonable or particular suspicion of some criminal activity. That did not- Okay, that did. Counsel, they got that suspicion from the dog sniff. The dog sniff in and of itself is not a search and it's not a seizure, correct? The car was parked at the gas station. The occupants were in the building there. They weren't there when the so the dog sniff that ended up giving them the reasonable suspicion and actually probable cause to do the search, correct? Well, Your Honor, I would disagree with that. Instead, the video evidence in this case was that Mr. Kendricks El was returning to the vehicle as the dog sniff was commencing. He was protesting the sniff within seconds of it starting and that there was no final alert that was given that would have given probable cause to search the vehicle and to detain Mr. Kendricks El. In fact, the trooper Scott specifically stated that the dog went into order within two seconds and that at that point they were not free to leave. There is- There was no evidence presented that this K-9 Thanos was certified, had any training on anything other than giving a final alert. Everything other than that was just based upon his subjective belief and that simply would not be enough to detain Mr. Kendricks or his vehicle without reasonable or articulable suspicion and he was at that point prior to running the search, prior to Mr. Kendricks being detained, prior to him being denied access to the vehicle, he wouldn't- He wouldn't be able to get away from the car. He was physically prevented from the vehicle because of the sniff while it was going on prior to any final alert that was given and that required reasonable articulable suspicion. At that point, the only thing that the officer was relying upon was that my client was looking forward while he was driving, that he was driving a dirty car, that the vehicle was a rental, and then during the conversation at the gas station, at the gas pump itself, my client was not regurgitating information but just was giving short answers. That's all he had and that's what his basis was for because he wanted to conduct a consensual encounter on Mr. Kendricks. Counsel, there was a lot there. Let's break this down. I want to know in that argument at what point Trooper Scott needed a reasonable articulable suspicion. At what point in this fact pattern? Prior to conducting the sniff. Okay. Because it resulted in his vehicle being detained and him being detained. If it was a situation where the detention of the vehicle or Mr. Kendricks wasn't detained, then I would wholeheartedly agree that the vehicle could- the dog could walk around it. But because in this situation, the video clearly shows as the search is going on, Mr. Kendricks is he sees the car, he raises his hand in protest, and you can hear within seconds of the search being conducted, Mr. Kendricks protesting this. At that point, he's detained. He has no access to the vehicle and the only thing would be for him to walk away. I'm with you on that. Okay, so there's a couple other follow-up. I'm not sure what the being present and not present and at what point the protest is relevant in light of the fact that this dog goes into odor within seconds. Can you talk to me about or the court about that? Well, I would, your honor. That- the entire evidence of the dog certification was based upon the dog giving a final alert. It wasn't based upon change of behavior. The 100% accuracy that the state, you know, relied upon on this- on this canine during the control test that they- that the dog had during his training, all of that was based upon giving a final alert, not some subjective change in behavior. And I could not find another case in Illinois where a change in behavior was simply enough, where that gave rise to detain somebody or their vehicle. Right, now we're back to Justice Zinoff's question is once there is going into odor, articulable suspicion, then, you know, the officer is going to continue in what he started, right? I would say yes, but I think it first needs to start with reasonable articulable suspicion. The articulable suspicion can't come about after the dog sniff started because the sniff itself to detain Mr. Kendricks and his vehicle, the dog- the officer needed to possess reasonable articulable suspicion. Now- I'm with you. I'm with you. I- I get your argument. So the- the trouble that I'm parsing from it is that this dog sniff occurred, the dog goes into odor, now the officer has suspicion and- and we're moving forward. Your reply to that is my client's out there protesting, can't go anywhere. Good argument, but those couple of seconds before he gets back to the car, the dog is in odor and the police officer has suspicion. Can you address that? I- I would argue that it's occurring at the same time, that the dog sniff hasn't even started when he's coming back out and he's protesting as this dog sniff is become- is starting and it's within this two to three seconds of this dog allegedly going into odor and that period of that- even that period of time he's detained and he- there is no probable cause, there's no reasonable articulable suspicion. Officer Trooper Scott is just acting simply on a hunch to see what he can find and that the fact that this search occurred or the sniff occurred as he's walking out, that is when he's detained because at that point he cannot access his vehicle. How do you square that with Ortiz and Thomas, the ruins I'm sure you're familiar with? We've got a public place, we've got a sniff on the exterior of a car. Well, I- I would just highlight still the- the detention, your honor, that once the detention of Mr. Kendricks L while the search is ongoing is- Well, that's- that's the trick, isn't it? That's the rub. You're saying while it's going on, but if the dog's already gone into odor- Well, I mean while it's going on what I mean by that is he's walking out, Trooper Scott is bringing the dog out of the vehicle and that's when the search is- at that point reasonable articulable suspicion- Okay, at that point- at that point- at that point, I'm just going to stop you and slow this down. I'm sorry to interrupt so much, I normally don't do this, but at that point, client's walking out, dog is beginning to sniff. Take a picture of that point. Where's the problem? Well, I mean, I don't know if the dog is beginning to sniff, he's getting the orders to begin to sniff and the- you know, the- the procedures that begin the sniff, that's when what's occurring as he's walking out and the dog is walking- beginning his walking when my client is protesting and again, you know, I don't want to keep harping, but at that point, reasonable articulable suspicion needed to be possessed by Trooper Scott and he simply didn't have it at that point. Counsel, you seem to be arguing, if I'm following you, that when the dog goes into odor, that has no significance or did I miss- not understand you correctly? Well, your honor, I would say that that would be not enough to give probable cause to detain my client, that it would be, you know, perhaps it would give reasonable articulable suspicion to continue the search, but my real point on this is that to conduct the search, to begin the search, to commence the search, reasonable articulable suspicion needed to occur, that the dog sniff can't just simply occur while my client is denied access to his vehicle and then that dog goes into odor, that that cannot be grounds to continue the search. But you've got to tie that up with detention and you're making an excellent argument, but I just want to make that point. Ortiz and Thomas, there's no tying up that issue with detention. Well, I mean, I think that the detention occurs the second my client walks out of the gas station and sees what's occurring. Counsel, let me ask you, I thought your client had already told the officer that he did not want the canine to be walked around his vehicle. Am I wrong about that? He absolutely did. During- at the gas pump, prior to him walking into the gas station, the last question that Trooper Scott asked him is, my client's brother walks back, the Trooper Scott asked him, you know, something to the effect, are you guys leaving? My client says yes, and then he says, hey, you know, got a question for you, do you mind if I walk the dog around? And my client says no. Okay, but you don't seem to argue that that, what you just described, amounts to a detention. Or are you arguing that? If you are, I haven't gleaned it yet. Well, I have not argued that, your honor, and I think the reason why I did not argue that is there was nothing- Trooper Scott did not do anything to prevent him from leaving. My client, at that point, could have gotten into the car and driven away, but he was freed, his freedom of movement wasn't restricted by that question. So that's the reason why I didn't argue that he was detained at that point. So you're not arguing that the question posed by the officer, responded to by your client, then amounted to a kind of an implicit directive to your client that he was not free to leave and couldn't go jump in his car real fast before the officer could get out there and get that dog and walk it around the vehicle. That's not your argument, right? No, your honor. I think my client's refusal to consent to the search, I think, plays into the part of him being detained as he's walking out of the gas station. Because at that point, he's already said, I don't want my car to be searched. He locks it as he's leaving. So I think the fact that he denied the request for a search, in and of itself, didn't amount to a seizure. But I think it's a part in why him exiting the gas station and seeing what's going on amounted to a seizure. And he was detained when he walked out of the gas station and saw this dog being prepared to be When an officer requests permission to walk the dog, and that request is denied, and then the officer does it anyway, there must not be a case that says that the response to the officer is enough to constitutionally not permit the canine walk to occur. I think if there was a case, you would have probably found it. I hope I would have, your honor. There's the case law, and it has been that it's a factor in whether the meninal, you know, the meninobostic factors of whether somebody is seized. But the question, in and of itself, doesn't amount to a seizure. If I may continue to my second argument, your honors. The Fourth Amendment has two approaches to protecting against unreasonable searches and seizures. One of them is a property-based approach, which states that when the government trespasses on a protected area to obtain information, that that is a search. Here, my client's vehicle was trusted past the time by canine Thanos during the sniff. During the sniff, canine Thanos, on multiple occasions, put his paws on my client's vehicle, aggressively sniffed underneath the wheel well, underneath the bumper. And this trespass resulted in my client's vehicle being dispossessed, and it was an intermeddling under common law trespass. And as a result, my client's Fourth Amendment rights were violated as a result of... Counsel, let me stop you there. I think you're running into a problem again with the dog going into odor because the dog had got into odor before the dog actually put its paws on the vehicle or sniffed under the wheel well. Isn't that correct? Correct, your honor. But I would argue that that is that during the search, whether there's reasonable article of suspicion to support a search or not, that sniff can't occur with the dog trespassing. And that's exactly what occurred here. Under Supreme Court precedent, that there was unquestionably the sniff was to obtain information about what was inside of Mr. Kendrick's car, which is an effect under the Fourth Amendment. And during that, the canine trespass, and the trespass, like I said, was the paws on the car, multiple occasions, the aggressive sniffing under the wheel well. Anybody who would come out and see a private person with their dog walking this way around their vehicle would have every right to protest, would have every right to tell that person to stop to get your dog away. And that person would have every right to file a civil lawsuit for trespass if that dog caused any damages. And anybody who owns a dog would know that the dog's scratched up the paint, they scratch up the clear coat. But under the Fourth Amendment, there doesn't need to be an actionable tort for a Fourth Amendment violation to lie. There just simply has to be a trespass by the government for the purposes of seeking information. Well, counsel, let me ask you this. If there's Supreme Court authority for the fact that a dog going into odor is enough for PC, isn't this a timing issue? Like, didn't you almost have to argue that the subsequent touching of the car after going to odor is somehow a trespass, which I think is a tough argument. Well, Your Honor, I would just highlight the case that I cited to, Idaho versus Dorff, which was pending the Supreme Court denied writ to, so that case is now final. In that case, while the search is occurring, the trespass occurred. And there was no issue with it. The issue was the fact that while this dog sniff was occurring, a trespass occurred, and that was prohibited against by the Fourth Amendment. Justice Kavanaugh, did you have any further questions because he is running out of time? No, thank you. Okay, you will have rebuttal, Mr. Jalil. Mr. Nicolosi, you may proceed with your argument now. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the court, Mr. Jalil, I apologize once again for the technical difficulty I had this morning and also for not having the proper background or the recommended background on my phone. I was not prepared for that, so I hope the court will accept my apologies. We accept your apology. None is needed. We have our own technical difficulties. Yeah, I understand. Technology is a fickle thing sometimes. Your Honor, the state would argue that the trial court properly denied the defendant's motion to suppress in this case. As Your Honors pointed out repeatedly during opposing counsel's argument, this case does come down to timing. Trooper Scott only brought the canine out once the Kendrix's went into the gas station store. There is, of course, a plethora of case law that established that, of course, number one, a dog sniff is not a search. Number two, that an officer can walk a dog around a vehicle to sniff if that vehicle is in a public place and is unattended. There's much case law from other jurisdictions, as I cited in my brief, that permit such activity. So the fact that Trooper Scott brought this dog out at an appropriate time to do so, the state establishes that this dog sniff was proper. As counsel stated, he argued that the state, the prosecution below, did not argue that there was reasonable suspicion to bring this dog around the car. That is, of course, because the trooper did not need reasonable suspicion or probable cause or any type of threshold that accompanies other type of situations because this is a different situation altogether. Good morning. How do you respond to opposing counsel's argument that, in essence, the defendant was detained when the trooper took the dog out of the car, was about to start the search, and the defendant walked out and said stop or started protesting, and yet the search, or the sniff, I'm sorry, not the search, the sniff went on? How do you respond to the argument that, in essence, he couldn't get into his car, he couldn't go drive away at that point, and so he was detained and at that point there was no final alert by the dog, then that was improper? Your Honor, the state would submit that the defendant wasn't detained because he wasn't near his car, he wasn't in his car, he was an X number of feet away from his car. The state would also submit that, based on the recording in Joint Exhibit 1, the defendant stated, can I have your badge number? It wasn't, you know, if we're going to parse it down, if we're going to, you know, go into significant detail here, he didn't tell the officer to stop doing it. I think it's because it was kind of simultaneously. I didn't sync up Joint Exhibit 1 with the other joint exhibits that had the video of the stop, so I don't specifically remember how that expressly lines up, but as Your Honor's noted during counsel's argument, and as Trooper Scott testified, the dog went into odor two seconds after beginning the search, or the sniff. Please strike that from the record, that's not a search, it was a sniff, of course. But the fact is, Trooper Scott can be seen with the dog right at the front driver's side prepping the dog, and then as Trooper Scott testified, the dog went into odor at the driver's side, driver's door, and driver wheel well, which is obviously right in the vicinity where the Trooper Scott prepped the dog to start the search, the sniff. So the fact that the defendant was maybe just exiting the gas station store and asked for his badge number is insignificant with regard to this analysis. He was not detained at that point, he was not at his car, he was not ready to leave. His brother was still in the store for I don't remember how many seconds or a minute later, as the video would point out. So as I argued in my brief, however important it is, the fact was the defendant was detained by his brother not being ready to leave either. It's not as though, you know, they were in the car ready to leave. And of course, if we're talking about physical detention, the defendant could have turned around and walked 100 miles in any direction. It's not as though he was actually physically detained by this officer. He was on foot, he was in the gas station store. So for purposes of Fourth Amendment law, for talking about detention of a person, I don't see how we could argue that defendant was detained at this for this discussion. The fact is, well, he wasn't near the car. Even if he could be heard kind of simultaneously with the start of the sniff, the fact that the dog went into odor right away at the beginning of the sniff, that changes the whole dynamic of what happens going forward. At that point, there's case law, of course, that says that a positive alert gives probable cause to continue the investigation and search the vehicle. Even falling short of that, that this wasn't a positive alert, though. I mean, the dog had not finished and gone through the final step. This was just the dog becoming an odor opposing counsel felt that that was not a significant event that happened. I mean, how would you incorporate that into your response? Your Honor, I would argue that there was absolutely no case law that holds, whether it's Illinois case law or cases from other jurisdictions that hold, that it must be a positive or a final alert in order to provide probable cause to search the vehicle. That's just simply, there's no law supporting that. Even in Thomas, the case that Justice Kavanaugh mentioned, it even discussed that courts fall short of making a hard line rule that it must be a final alert because cases and dogs and the way they're trained and things like that differ from case to case. In this case, Trooper Scott testified that the dog alerts. It's a passive alert dog. One of the ways that the dog indicates going into odor and finding what the dog was trained to uncover was changes of behavior, quick head snaps, things like that. The training record, the state submits that these things provided at that point. Even if somehow we're going to argue that going into odor right away did not establish probable cause, even though there's no law that says anything like that, the state would argue that's certainly reasonable suspicion to continue the dog sniff. And at that point, even if, again, assuming arguendo, the defendant is detained at that point, that's a lawful detention because the trooper has at the bare minimum reasonable articulable suspicion to continue walking his dog around the vehicle at that point based on the fact that the dog went into odor right away. So a state would submit that based on the immediacy of Thanos's alert on this vehicle, anything that happened from there on out regarding the defendant or his access to his vehicle was lawful as it pertains to Trooper Scott. Moving on to the property argument that the defendant made, the state again relies on its brief heavily. The state submits not only did we have the initial alert by the wheel well, the seen at the back of the car with a head snap and a real change of behavior, which again, based on Trooper Scott's testimony, was indicative that the dog alerted onto the vehicle. And these events happened prior to the dog ever putting its paws on the car. Regarding that Dorf case that council discussed, the state, as I argued in my brief, believes that the dissent in that case is much more well-reasoned than the majority, that such an act, an instinctive act by a dog doing a procedure, a dog sniff that is universally permitted, that just can't, you can't leap, from a proper sniff to occupying private property based on the dog touching the car. So the state would submit that again, even if this, this court was going to get to that point in this case and the state strongly submits that this court should not, the state submits that the dog touching the vehicle does not make it, may turn a sniff into a search. So for all these reasons, the state submits that the trial court's ruling on the defendant's motion to suppress was proper, and this court should affirm that decision. If there are any other questions, I'd be happy. Mr. Nicolosi, apparently it doesn't matter, but I'm kind of bothered that the officer went into the gas station, asked for permission to walk the dog around the car, and the defendant said, no, I don't want you to. Do you deem that to be irrelevant? I do. I understand the concern, but no, that's not relevant with regard to the fourth amendment here. The fact is that that vehicle was shortly thereafter left unattended in a public place that trooper Scott had a place to be, had the right to be. And the trooper, I think it's evident by this, the video and the evidence here, the trooper did know the law that once this vehicle was unattended, he could walk his canine around that vehicle. So no, I don't believe the prior giving the consent. I don't believe that the officer was under any obligation to leave and move on to other matters at that point, Your Honor. If the defendant said, no, I don't want you to walk the dog around my car, and the officer then said, well, I'm going to do it anyway, would that make any difference? Well, it depends on where the defendant is at that point, I think, Your Honor. I mean, if the vehicle was attended and the defendant and his brother around the vehicle and attending the vehicle, for lack of a better word, the opposite of unattending, then yes, I think it does matter, Your Honor. But the fact that they leave the vehicle, that's the only thing that triggered the trooper to bring the dog out, because I believe he knew the law that this vehicle was unoccupied, it was unattended. And again, there's a plethora of case law that say that action by an officer and his dog is proper. Well, that leads to this question. The occupants of the vehicle, former occupants of the vehicle, are 20 feet away in a store. Is the car unattended? Abandoned? It's not abandoned. I certainly wouldn't go as far as but unattended, yes, I absolutely believe that. And again, they're just not there. And again, there's cases about motel parking lots. There's the case of Dyson that I cited in my brief, 2011 federal case, where a car was at a gas station and the officers even observed the car and saw people from another vehicle go into that car and leave. So they're clearly coming to and from the vehicle. And then the officers later walk the dog around the car. So yeah, I think, I mean, you know, cases are, of course, fact specific. And, you know, every case is dependent on its own facts. But I think the fact, even if you went in the car, both occupants of that vehicle went in a building, I believe the car is at that point, for purposes of Fourth Amendment analysis, unattended. Okay, I see no further questions. Mr. Jalil, do you have any rebuttal? Please, Your Honor, very briefly. First thing I would like to say is, you know, the government states that, you know, the dog touching the vehicle is an instinctive act of dog. But I would just highlight that the whole reason why dogs are allowed is because based upon the premise that these are highly trained animals, and that they're handled by highly trained professionals, and the trained the dog shouldn't be trained out of whatever instance that it may have. And just also, it appears from that Illinois State Police dogs are trained to touch vehicles because the officer trooper testified that they will on high for high alerts, they will touch vehicles. And that should just not be the case if they're going to be relying on the fact that this dog is so highly trained. And then also the training that this dog received, and all the certification that it received was on final alerts. There was no evidence, no training, no certification given for a change in behavior, which is a completely subjective factor. And also the change in behavior that occurred happened at the trunk of or at the back of the vehicle, not at the driver's side door. So the search had already gone on at this point, from the start of it, where it started at the driver's side door, it went to the back driver's side door, then to the trunk, and then past the trunk. And then the officer said that had snapped back after it got past the trunk. So the search had already started, my client had already exited at that point. And whether he's five feet away, 20 feet away, doesn't change the fact that he has zero access to his vehicle at this point. He can't get in the car, he can't access it. And whether he can walk away, I would submit he can't. Everything that he's possessed over a multi-day trip is in this vehicle. It's a rental vehicle that has to be returned, otherwise he's going to face serious consequences for it. And he's at that point seven, eight hours away from his house, with no other way to get back home. So he can't just walk away from the car. And also, I know the case law on Dog Smiths is that they are not a search, but I would just highlight to this court, the U.S. Supreme Court, Florida versus Georgianese, where in that case, the search of the exterior of that house was deemed to be a search. And regarding the car being unattended, Trooper Scott knew when he, prior to Mr. Kendricksell even walking away from the car, that they were about to leave. He specifically asked that question, hey, are you guys about to leave? My client said yes. And the precedent would be essentially that police officers with a canine could sit around grocery stores, could sit at gas stations, and the second that somebody walks away, walk the dog around, and then have a subjective, oh, you know what, there's a change in behavior that there's no training for, but just my subjective belief that there's a change in behavior, and now I've got car wash authority to search this car, it would just allow police officers unfettered access to conduct Dog Sniffs. And that certainly cannot be what protected under the Fourth Amendment. Excuse me. You argued earlier that when the trooper brought the dog out and started the sniff, the occupant of the car was walking out of the gas station and started protesting, and that constituted detaining the defendant or the occupant of the car. Would it matter if the trooper thought otherwise, didn't think he was detaining him, that he had a good faith basis for proceeding and going ahead and doing what he did, not thinking at that point that the occupant of the car was being detained? Well, Your Honor, the subjective belief of the police officer really shouldn't play a part in the Fourth Amendment analysis here, but I think an objective police officer in the situation would know that a detention of this vehicle is occurring when the person is denied access to this car, and the trooper knew that this was a gas station. It wasn't a restaurant. It wasn't a motel. It wasn't an apartment building. The car wasn't legally parked. It couldn't stay there indefinitely. If the car was parked at a gas pump, the management at the gas station would have every right to get that car towed. If the decision, the Kendricks brothers wanted to go eat breakfast at a local restaurant there, they couldn't just leave the car there and go to the restaurant because that car would be towed because it's not legally parked. The car, for all intents and purposes, needs to be attended to. While the car gas is being pumped, there are signs over there that says, do not leave your car unattended. In most roadside off the interstate, you pump the car. Whether Mr. Kendricks L. was planning on getting in the car and driving away or whether he was planning to get into the car and park it so they could go eat breakfast, use the bathroom or whatnot, that doesn't matter. The fact is that prior to this dog having any sort of a change in my client was denied access to this vehicle because of the sniff that was ongoing. This happened essentially at the exact same time that my client is walking out. Trooper Scott is preparing this. Then seconds later is what the trooper says. Then in the videos, seconds after, you can hear him protesting about the car. It was essentially at the same time. Justice Zinoff, has counsel answered your question? Yes, he has. Thank you. Mr. Jalil, you are out of time. The court thanks both of you for your arguments. The case is now submitted and the court will stand in recess until 1 o'clock this afternoon.